■ JOHN W. GIBLIN, Respondent, v STEPHEN G. MURPHY et al., Appellants. — Appeal from a judgment of the Supreme Court in favor of plaintiff, entered September 20, 1982 in Schoharie County, upon a decision of the court at Trial Term (Kahn, J.), without a jury. Plaintiff was the majority owner and president of defendant Westwood Paper & Hardware Company, Inc. (Westwood), a corporation engaged in the sale and distribution of hardware and paper products since 1955 with its place of business located in Manhattan. The only other shareholder of Westwood was Edward K. Sarraf. On or about April 20, 1979, plaintiff and Sarraf closed a deal for the sale of their shares in Westwood to defendant Sinclair Distributors, Inc. (Sinclair). Sinclair never conducted any business prior to its purchase of Westwood and never owned any assets other than Westwood's. Defendants Stephen G. Murphy, Salvatore F. Quagliata and Steven Hoffenberg were the officers and directors of Sinclair and each owned one third of its stock. The terms of the sale were contained in a purchase agreement, promissory note and pledge agreement. Sinclair promised to pay $200,000 for the Westwood shares; $40,000 down and $160,000 plus interest in monthly installments. The installment payments were secured by a pledge to the sellers of Westwood stock. The sellers also received the right to inspect Westwood's premises, property and financial and corporate records at any time. They were to be advised of all Westwood's shareholders' meetings and given a written account of all corporate action taken by Westwood's directors or shareholders. Among the rights and remedies granted the sellers in the event of a default in making the monthly installment payments or in abiding by the terms of the purchase and pledge agreements were the rights to accelerate the amounts due under the promissory note, to reassume control of Westwood by voting their pledged shares, and to sell their shares. Upon a default, Westwood was prohibited from making any wage or other payments to Quagliata, Murphy or any other Sinclair shareholder. By April, 1980, the installment payments due plaintiff and Sarraf were no longer being paid in full and plaintiff, through his attorney, accelerated the balance due. Checks tendered in payment of the balance due had been drawn on Westwood's account, not Sinclair's. During the summer of 1980, an involuntary bankruptcy petition was filed against Westwood and Westwood filed a chapter 11 bankruptcy petition. In its approximate one year of operating under Sinclair, Westwood showed a net loss of $168,000; had accumulated extensive bad debts (mainly in its new retail outlets); had paid commissions in the sum of about $72,000 to Hoffenberg, Quagliata, plaintiff, Sarraf and Larry Lowy, who ran one of the retail outlets; and had paid salaries to Hoffenberg of approximately $18,000 at $500 per week, to Murphy of $12,600 at $350 per week, and to Quagliata of about $12,600 at $350 per week, which salary payments apparently continued beyond the time of the default in installment payments in violation of the pledge agreement. Plaintiff did not draw salary or wages in 1980. In June, 1980, the instant action was commenced alleging eight causes of action. Cause of action number one against Sinclair claimed failure to comply with the promissory note, alleging $110,268.60 due. The second cause of action against Sinclair alleged breach of the purchase agreement by failure to pay installments due. The third cause of action against Westwood alleged that it

assumed the debts and liabilities of Sinclair and, therefore, was liable to plaintiff for installments due. Cause of action number four against Murphy, Quagliata and Hoffenberg alleged that they made fraudulent misrepresentations to plaintiff that they were competent to and would manage Westwood profitably. Plaintiff alleged damages for such conduct of $110,268.60 plus punitive damages of $250,000. Cause of action number five against the individual defendants alleged diversion of Westwood's assets to themselves, thereby interfering with plaintiff's contracts with Westwood and Sinclair, and requested the same damages. Cause of action number six against both the corporate and individual defendants claimed violation of the pledge agreement; not allowing plaintiff to view corporate records; not properly advising plaintiff of corporate actions and meetings; and distribution of salary and wages to the individual defendants in violation of the pledge agreement. Plaintiff stated it was damaged thereby in the sum of $110,268.60. The seventh cause of action against all defendants alleged that defendants fraudulently induced plaintiff to sell Westwood to them, and claimed damages of $110,268.60 plus punitive damages of $250,000. Finally, cause of action number eight against all defendants sought reasonable attorney's fees. Following a five-day nonjury trial in October, 1981, the court, *inter alia,* found due and owing on the promissory note $110,268.60; that each of the individual defendants breached the pledge agreement by refusing plaintiff access to Westwood's corporate and financial records and in failing to notify plaintiff of corporate meetings and by receiving payments beyond the time of the default in installment payments; that losses due to the operation of the retail outlets totaled $119,919.84; that the Westwood-retail outlet relationship was formed and conducted without corporate meetings; that the move of Westwood to Long Island City was a violation of the pledge agreement because of lack of notification to plaintiff, as was the establishment of the Westwood 14th Street operation; that the individual defendants made material misrepresentations to plaintiff, influencing his decision to sell; that attorney's fees were warranted under the terms of the promissory note; and that "the actions taken were in gross and callous disregard of the rights and remedies of the plaintiff * * * that the conduct of the defendants is shocking to the conscience of the Court, particularly for attorneys and experienced businessmen, and * * * an award of punitive damages is appropriate". The trial court granted plaintiff judgment of $110,268.60 against the corporate defendants. On causes of action number four, five, six and seven, the court ruled that the individual defendants had fraudulently induced plaintiff to sell Westwood, entitling plaintiff to damages of $110,268.60 plus punitive damages of $250,000. The court also found that the individual defendants breached the pledge agreement and interfered with and impaired Sinclair's obligation to make installment payments to plaintiff; that defendants' operation of the business established the fraud and misrepresentations of the individual defendants; that the individual defendants fraudulently diverted Westwood's assets to themselves, and concealed their actions from plaintiff, entitling plaintiff to $110,268.60 in damages plus punitive damages of $250,000. The court also held that plaintiff was entitled to 20% attorney's fees. Following entry of judgment for plaintiff against all defendants severally and jointly for $313,885.72, consisting of damages of $110,268.60, punitive damages of $150,000, attorney's fees of $52,053.72 and costs of $1,563.40, this appeal was taken by defendants. Defendants on this appeal argue that there was a lack of evidence to support the findings made by the trial court, that there was no basis for an award of punitive damages, and that the award of attorney's fees was improper. These issues will be discussed below. Defendants' first contention that plaintiff failed to prove a case in fraud against defendants is well taken. The trial court improperly found that the

individual defendants had fraudulently induced plaintiff to enter into the sale. Although defendants clearly made misrepresentations to plaintiff with respect to their own competence and ability to generate business and their plans to operate Westwood's business profitably, upon which he relied, such representations were not false statements of fact, but rather were promissory in nature and related to future actions or conduct. Statements, promissory in nature, are not actionable as fraud unless plaintiff can show that defendants, at the time they were made, had no intention of carrying them out (*Brown v Lockwood,* 76 AD2d 721). This record lacks that proof. We note that at the time representations were made to plaintiff herein, defendants were not in any fiduciary or confidential relationship, but were merely prospective contractors (see *id.,* at p 733). The failure to carry out such promises is not sufficient, in itself, to prove fraud (*id.,* at pp 732-733). Defendants next argue that the trial court improperly pierced the corporate veil. We disagree. The individual defendants were the sole stockholders of Sinclair and its officers and directors. Defendant Hoffenberg described Sinclair to plaintiff as a "shell * * * used for acquiring companies". From the record, it appears that the only thing Sinclair ever did was sign the purchase, note and pledge agreements. Sinclair was a mere dummy corporation and the trial court was warranted in disregarding its corporate cover and finding the individual defendants liable for Sinclair's "corporate" obligations (see *Walkovszky v Carlton,* 18 NY2d 414; *Natelson v A.B.L. Holding Co.,* 260 NY 233). Further, since Sinclair was a "no asset" corporation, equity requires disregard of the corporate veil in order to satisfy any legitimate claims of plaintiff (cf. *Walkovszky v Carlton, supra*). As Sinclair is to be disregarded as a corporate entity, it follows that the contractual arrangement between Sinclair and plaintiff must actually be considered a contract between plaintiff and the individual defendants. The record demonstrates that these defendants breached their contractual agreements. They defaulted upon the note. They did not allow plaintiff to see Westwood's corporate and financial records. Plaintiff was not notified in writing of Westwood's acquisition of certain retail outlets and defendants, after defaulting in making installment payments, continued to receive wages and other compensation in violation of the pledge agreement. The trial court, therefore, contrary to defendants' contention, properly found the individual defendants liable for breach of the contractual arrangement between Sinclair and plaintiff. However, the trial court was incorrect when it found that the individual defendants had interfered with Sinclair's contractual obligations to plaintiff. The individual defendants cannot be held to have induced a breach of their own contractual obligations to plaintiff (*Robbins v Ogden Corp.,* 490 F Supp 801, 810). Next, we conclude that the trial court properly found the individual defendants liable for wrongful dissipation of Westwood's assets. Plaintiff, pursuant to the pledge agreement, possessed a beneficial interest in Westwood's stock (see 18 CJS, Corporations, § 426, subd c, pp 1019-1020). The individual defendants, as directors and officers of Westwood, had a fiduciary duty to protect plaintiff's stock interest (cf. *Matter of Cohen v Cocoline Prods.,* 309 NY 119) and were required to discharge that duty "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances" (Business Corporation Law, § 717). Here, plaintiff properly sued the individual defendants directly for their wrongful actions; their duty of care ran to plaintiff not only as directors of Westwood obligated to protect plaintiff's beneficial stock interest, but also as pledgors obliged to protect the pledge of Westwood's stock. It is clear that these defendants breached this duty. Their operation of Westwood amounted, at least, to willful or wanton negligence with respect to its assets (see 1A Warren, Negligence in the New York Courts [3d ed], Care and Negligence, § 3.03, pp

317-320), i.e., a wrongful diversion and squandering of Westwood assets to speculative enterprises (the retail outlets), the granting of excessive credit, and payments of salary to themselves beyond the default in installment payments (see 19 Am Jur 2d, Corporations, § 1274, pp 681-682). Defendants' contention that punitive damages were incorrectly awarded plaintiff by the trial court must be rejected. Punitive damages are properly awarded where the tortious act complained of involved a wanton or reckless disregard of plaintiff's rights (*Le Mistral, Inc. v Columbia Broadcasting System*, 61 AD2d 491, 494-495, app dsmd 46 NY2d 940; cf. *Walker v Sheldon*, 10 NY2d 401), and may be awarded against corporations as well as individuals (7A Warren, Negligence in the New York Courts [3d ed], Punitive Damages, § 3.02 [6], pp 126-128). The conduct of defendants in operating Westwood's business was grossly negligent and reckless and warranted the imposition of punitive damages. They ran a going business into bankruptcy in a matter of months. The award of $150,000 in punitive damages under these circumstances is not so excessive as to be shocking to one's conscience. Finally, we conclude that an award of attorney's fees to plaintiff would be proper because of the contractual provision between plaintiff and Sinclair so providing (see *Tucker v Toia*, 64 AD2d 826, app dsmd 48 NY2d 755). However, since plaintiff put in absolutely no proof with respect to the fee arrangement alleged in the complaint and no evidence of the value of reasonable attorney's fees incurred in prosecuting this action, the award of attorney's fees must be stricken. The case should be remitted for a new trial on the issue of the reasonable value of attorney's fees (see *Beyer v Murray*, 33 AD2d 246; *Frenchman & Sweet v Philco Discount Corp.*, 21 AD2d 180). Accordingly, the judgment should be modified by striking therefrom that portion awarding plaintiff $52,053.72 in attorney's fees. The matter should be remitted to Trial Term for a new trial on only the issue of the value of plaintiff's attorney's fees, and, as so modified, affirmed. Judgment modified, on the law and the facts, by striking therefrom the award of $52,053.72 to plaintiff in attorney's fees, matter remitted to Trial Term for a new trial on the issue of the value of plaintiff's attorney's fees, and, as so modified, affirmed, with costs to plaintiff. Mahoney, P. J., Sweeney, Main, Mikoll and Yesawich, Jr., JJ., concur.