John B. MOLYNEUX, Plaintiff,

v.

ARTHUR GUINNESS AND SONS, P.L.C., Defendant.

No. 83 Civ. 8265 (SDNY).

United States District Court, S.D. New York.

June 28, 1985.

---

Skadden, Arps, Slate Meagher & Flom,
New York City, N.Y., for plaintiff.

Sonnenfeld, Busner & Weinstein, P.C.,
New York City, N.Y., for defendant.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff John B. Molyneux commenced this action seeking damages for severance pay which allegedly became due and was wrongfully withheld when defendant sold its interest in a wholly-owned subsidiary to an unrelated corporation. The complaint sets forth two causes of action—one for violation of the provisions of ERISA, 29 U.S.C. §§ 1001 *et seq.* and the other for breach of contract. Defendant Arthur Guinness and Sons, P.L.C. ("AGS"), has moved pursuant to Rule 12(b), Fed.R. Civ.P., to dismiss the complaint on the grounds that (1) plaintiff has failed to establish *in personam* jurisdiction under New York's "long arm" statute and (2) the complaint fails to state a claim upon which relief can be granted. Both parties have submitted affidavits and legal memoranda addressing the pending motion.

### Background

AGS is a British corporation with a number of wholly-owned subsidiaries in Britain and elsewhere. AGS does no direct business in New York. Certain of its subsidiaries, however, have done or transacted business within the state. Among those which apparently have transacted business in New York are Callard and Bowser, Nuttall Limited ("CBN"), at one time a wholly-owned subsidiary of AGS, and Callard and Bowser (USA), Inc. ("CB/USA"), at one time a subsidiary of Guinness-Harp Corporation ("Guinness-Harp"), itself a wholly-owned subsidiary of AGS through an entity called Guinness Overseas, Ltd. In 1982, AGS sold all of its holdings in CBN and CB/USA to Beatrice Foods (U.K.) Limited and Beatrice Foods Co. (jointly "Beatrice").

Molyneux is a businessman who from 1957 until 1982 was directly employed by various AGS subsidiaries. In 1964, Molyneux relocated from Britain to the United States. Since that time, Molyneux's work has been centered in the U.S. In 1978, under circumstances which are disputed, he moved from employment with Guinness-Harp to employment with CBN. Then, in 1980, he moved from CBN to CB/USA. He remained with CB/USA as its President through the time of the sale of AGS's holdings in CBN and CB/USA to Beatrice. Molyneux's position was unaffected by the sale; he continued to work for Beatrice.

The dispute in this case concerns an alleged policy (or contract) of AGS itself to pay severance benefits to employees of AGS and AGS subsidiaries when they are terminated for reasons beyond their control, benefits which are based on an employee's total length of service with AGS and AGS subsidiaries. Molyneux claims that he is entitled to such benefits, as a matter of federal law under ERISA and as a matter of contract, because the sale of stock to Beatrice effectively concluded Molyneux's association with AGS, and "triggered" the severance pay provisions. AGS claims that at the relevant times any severance pay policies were maintained not by AGS but by the subsidiaries themselves, that AGS exercised at most a general guidance over such policies, that divestiture or transfer of ownership would not trigger any severance pay policy, and that no payments have ever been made by AGS or AGS subsidiaries to an AGS subsidiary employee where the subsidiary has been divested and the employee has retained his job under the new ownership.

AGS was served with process by mail to its corporate operation in London, apparently pursuant to Rule 4 (i), Fed.R.Civ.P. Defendant contests personal jurisdiction, however, on the ground that AGS exercises insufficient control over its subsidiaries to justify application of New York's "long arm" statute. AGS has not raised the question of subject matter jurisdiction. The complaint grounds federal jurisdiction on the provisions of 28 U.S.C. § 1331 ("federal question") and 29 U.S.C. § 1132 (ERISA), and on the principle of pendent jurisdiction.

Based on the present record, the court does not find subject matter jurisdiction to

decide the claims raised by the complaint.[1] The complaint does not state a cause of action under ERISA. No reason appears why the court should exercise pendent jurisdiction over the contract claim. Accordingly, the complaint is dismissed without consideration of the issue of personal jurisdiction.[2]

### Discussion

### I. Federal Question Jurisdiction

[1, 2] To maintain an action in federal court, the plaintiff must allege facts which, if taken as true, are sufficient to support federal jurisdiction over the claims. It is the duty of the court to consider the issue of subject matter jurisdiction, even if not raised by the parties.[3]

■ In this case, plaintiff asserts that federal question jurisdiction exists based on the ERISA claim. Disputes concerning severance pay may, but do not necessarily, implicate ERISA and support federal jurisdiction. To establish federal jurisdiction, the complaint must allege such facts as will show the establishment or maintenance of a "plan, fund, or program" of the type covered by ERISA. *See Donovan v. Dillingham*, 688 F.2d 1367, 1369–70 (11th Cir. 1982) (*en banc*) (health insurance benefits).

■ The complaint places the conclusory label of "policy or plan" on prior payments of severance benefits by AGS, but does not state facts which would justify a court in concluding that a "plan, fund, or program" exists. Although one need not allege the existence of a formal written plan to establish federal question jurisdiction, the fact that in the past severance benefits may have been extended, or that there have been decisions to extend such benefits, is not sufficient to show establishment of a plan or program. *See Donovan v. Dillingham, supra*, 688 F.2d at 1373 (informal "plan" providing health benefits established where employer obtained group health insurance policy "to furnish specified insurance benefits" to class of employees). To show "establishment," the surrounding circumstances must be such that "a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham, supra*, 688 F.2d at 1373; *see also Roe v. General American Life Ins. Co.*, 712 F.2d 450 (10th Cir.1983); *Blue Cross v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258, 1267 (N.D.Ala.1983) (citing *Donovan*); *California Hosp. Assn. v. Henning*, 569 F.Supp. 1544 (C.D.Cal.1983) (citing *Donovan*). In this case, the complaint alleges little more than that "plaintiff was aware of the company's benefit plans," that Molyneux was offered a choice of severance payment or transfer to CBN in 1978 when his position at Guinness-Harp became redundant, and that the possibility of a termination payment was mentioned in the letter agreement under which he accepted employment with CBN and was "not denied" when later raised with the managing director of CBN and a personnel director affiliated with AGS.[4] Plaintiff nowhere al-

1. There is no assertion of diversity jurisdiction in this case. Molyneux apparently is a British subject; AGS is a British corporation.

2. The parties have devoted a great deal of attention in their motion papers to the facts underlying the dispute. Both sides have submitted affidavits and documentary evidence. For the purposes of this order, the material factual allegations of the complaint are taken as true. *See Gardner v. Toilet Goods Assn.*, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967). This does not mean, however, that the court accepts without question conclusory allegations in the complaint—naked assertions are insufficient to state a claim. *Cf. Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976); *Martin v. New York State Dept. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (actions under 42 U.S.C. § 1981 and § 2000e *et seq.*

3. In its motion under Rule 12(b)(6), Fed.R. Civ.P., defendant briefly argued that the ERISA claim was without basis. In his response, plaintiff discussed the basis for the claim of breach of fiduciary duty under ERISA. *See* plaintiff's memorandum in opposition at 31–33.

4. Although defendant argues that AGS was not a party to the agreement Molyneux refers to, it does not dispute that paragraph 7 of the agreement states:

Termination: The appointment will be terminable by not less than one month's notice

leges that AGS or its subsidiaries ever publicized such a policy to officers or employees, or that employees other than Molyneux were aware of such a practice. No allegations concern established procedures (written or unwritten), the employee group to be covered, or the method of financing or calculating benefits. Thus, there is nothing to suggest that AGS "established" a "plan."[5]

A second, and perhaps more important, flaw with the complaint is that even if it is assumed that there is a "plan, fund, or program," it fails to allege facts which would allow the court to find that the plan or program is one covered by ERISA. Molyneux's fundamental (and strenuously argued) position with respect to both the ERISA and the contract claims is that AGS was his employer for all purposes at all times from 1957 until the sale to Beatrice in 1982, because of the extent of AGS control over its subsidiaries.[6] According to the complaint, AGS is a "foreign corporation duly organized and existing under the laws of the United Kingdom," a "multi-national corporation, operating over fifty subsidiaries and associated companies throughout the world." There is no dispute that AGS is based in Britain, not in the United States. Although it is not disputed that Molyneux resides in New York, it appears that he is a British subject. Nowhere in the complaint or in the lengthy affidavits before the court is there any suggestion that the severance pay "plan," should it exist, covers even one U.S. citizen employed in the United States, or that a severance payment has ever been made by AGS to any alien in the United States. ERISA explicitly excludes from its coverage any employee benefit plan if "such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are non-resident aliens." 29 U.S.C. § 1003(b)(4). Thus, on the facts alleged, ERISA is irrelevant.[7]

Under the facts alleged, then, the court sees no basis for asserting federal question jurisdiction.

on either side or a longer period by mutual agreement. In the event of termination taking place for reason beyond your control the whole of your Guinness service will be taken into account in assessing any termination payment."

It is unclear from the context whether "Guinness" refers to Guinness-Harp or AGS.

5. Plaintiff's affidavit is similarly lacking in specificity. It states no more than that "several" employees of the alleged "group" have received severance payments.

Read alone, certain portions of the affidavits submitted by defendant suggest that one or more of defendant's subsidiaries have made severance payments in the past. (It is unclear whether those payments by the subsidiaries were pursuant to a scheme which would qualify as a "plan" under ERISA, or were instead simply contractual or statutory entitlements under British law.) The same affidavits, however, clearly deny (1) that AGS controlled those subsidiaries or their severance pay practices, (2) that the practices were uniform among the subsidiaries, and (3) that payments have ever been made by the subsidiaries where employees retained their jobs after a company or division was divested. Since the affidavits specifically deny that AGS itself had any plan covering service with the alleged "group", plaintiff cannot rely on those affidavits to bolster his conclusory allegation that AGS had a "plan," as defined by ERISA, of making severance payments based on length of service with AGS or any AGS subsidiary. See affidavit of John D.C. Smiley, ¶¶ 3, 4, 6, 7; affidavit of Martin B. Chambers, ¶ 5; affidavit of Roger H.V. Dixon, ¶¶ 5, 6.

6. Molyneux does not make the more limited allegation that although the plan was actually one of CBN or CB/USA, AGS may nonetheless be considered a fiduciary or employer for ERISA purposes because of its control over the CBN or CB/USA plan. Molyneux clearly takes the position that the policy was a uniform one for AGS and AGS subsidiaries, so that service in any subsidiary or in AGS itself is relevant. Notably, neither CBN nor CB/USA is named in this action, nor is Guinness-Harp.

7. Even if it were possible to construe the clear language of 29 U.S.C. § 1003(b)(4) to permit suits such as this one, there is little to suggest that the purposes of ERISA extend to disputes between British subjects and British employers. Repeated references are made in the legislative history to American working men and women and to aspects of the Social Security system. See 1974 U.S.Code Cong. & Ad.News 4639 et seq. It is also noted that ERISA was not intended to cover "plans established or maintained outside of the United States for the benefit of non-United States citizens. . . ." H.R.Rep. (Educ. & Labor Comm.) No. 93–533, reprinted in 1974 U.S. Code Cong. & Ad.News 4639, 4656.

## II. *Pendent Jurisdiction*

 ERISA preempts many contract claims under state law. *See* 29 U.S.C. § 1144. Assuming arguendo that plaintiff's contract claim is not preempted, the only plausible basis for asserting jurisdiction over plaintiff's claim is the doctrine of pendent jurisdiction. Where a complaint states a claim which raises a substantial federal question and the other claims arise from a "common nucleus of operative fact," a federal court has the power to hear and determine all such claims. The exercise of such pendent jurisdiction, however, is a matter of discretion with the court. Among the factors a court is to consider are judicial economy, the character of the federal and non-federal claims, fairness to the witnesses, the law to be applied, and the possibility of jury confusion. *See United ed Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Trustees of Ret. Ben. Plan, Etc. v. Equibank, N.A.*, 487 F.Supp. 58 (W.D.Pa.1980), *appeal dismissed*, 639 F.2d 776 (3d Cir.1980).

 In this case, even if there were federal jurisdiction over the ERISA claim, the court would decline to exercise pendent jurisdiction. Not only is this a dispute between a British subject and a British corporation, but it also appears that the contract at issue is governed by British law, that the majority of witnesses and relevant records are in Britain, and that many of the allegedly significant events and decisions occurred in Britain.

## III. *Failure to State a Claim Under ERISA*

 To establish a claim for violation of fiduciary duties under ERISA, a plaintiff must show that the fiduciary sued acted in a manner which was arbitrary, fraudulent, or in bad faith. *See, e.g., Sly v. P.R. Mallory*, 712 F.2d 1209 (7th Cir.1983) (approved denial of severance benefits to employees offered continued employment with purchaser of corporate division, where written severance pay policy was "not a contract but rather an employee welfare plan under ERISA" and administrators of plan "acted in a rational and reasonable manner, in good faith, [and] within their discretion); *Matthews v. Swift and Company*, 465 F.2d 814, 821 (5th Cir.1972); *Fentron Industries v. Nat. Shopmen Pension Fund*, 674 F.2d 1300, 1307 (9th Cir.1982). Where a fiduciary's good faith actions are rationally related to the purposes of the plan and do not violate any specific provision of ERISA, there is no violation of fiduciary duty. *See Petrella v. N.L. Industries, Inc.*, 529 F.Supp. 1357 (D.N.J.1982); *cf. Livernois v. Warner-Lambert Co., Inc.*, 723 F.2d 1148 (4th Cir.1983) (in action for breach of contract, whether sale of business as going concern constitutes termination entitling employees continuing work with new owner to severance benefits is a matter of contract interpretation).

 The decision not to pay severance benefits to former employees who after divestiture of a corporate division continue their work under the new ownership, without more, is not itself arbitrary, fraudulent, or violative of fiduciary duties. *See, e.g., Sly v. Mallory, supra*, 712 F.2d at 1211 ("to award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention or goal of ERISA"); *Pinto v. Zenith Radio Corp.*, 480 F.Supp. 361 (N.D.Ill.1979), *aff'd*, 618 F.2d 110 (7th Cir.1980); *cf. Calhoun v. Falstaff Brewing Corp.*, 478 F.Supp. 357 (E.D.Mo.1979) (summary judgment for defendant denied on claim for violation of fiduciary duty under ERISA where plaintiff alleged defendants amended the written severance plan "expressly to deny plaintiff his anticipated severance benefit" and "make employees ... ineligible, at a time when they were contemplating a large layoff of otherwise eligible employees"). Even when such a decision amounts to amendment rather than interpretation of an existing plan, no specific provision of ERISA is violated, since severance pay benefits are not subject to the participation, vesting, and funding requirements of ERI-

**246**

SA. *See* 29 U.S.C. §§ 1051, 1081; *see, e.g., Dhayer v. Weirton Steel Div. of Nat. Steel Corp.*, 571 F.Supp. 316, 330 (N.D.W.Va.), *aff'd*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, ⸺ U.S. ⸺, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Only where there is evidence of arbitrariness or bad faith in denying plaintiff benefits, as where an employer's prior practice has been to award severance benefits in cases of divestiture or sale of a going concern, or to award benefits without regard to actual unemployment, have courts considered that a plaintiff might be entitled to recover. *See, e.g., Blau v. DelMonte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984) (court reversed grant of summary judgment for defendant where specific formal plan was kept secret from ordinary employees, benefits were more available to officers than to employees, and provisions of ERISA were "flouted in a wholesale and flagrant manner"); *Sly v. P.R. Mallory, supra*, 712 F.2d at 1213 (complaint properly dismissed where employer's practice was consistent, even though employee had been with employer since 1964 and benefits were to be based on length of service); *Pinto v. Zenith Radio Corp., supra*, 480 F.Supp. at 363–64; *Petrella v. N.L. Industries, Inc., supra*, 529 F.Supp. at 1362 (summary judgment for defendant denied where evidence suggested that vaguely worded policy had been applied to award severance benefits to all terminated employees, whether or not actually unemployed after termination); *see also Calhoun v. Falstaff Brewing Corp., supra.*

In this case the complaint does not allege, and plaintiff's memorandum and affidavit do not suggest, that AGS or its subsidiaries previously have granted severance pay in cases of divestiture or sale, particularly where a former employee never became unemployed. Taken as true, the factual allegations are far from sufficient to show that AGS acted in a manner that was arbitrary, fraudulent, or in bad faith.[8]

8. In the absence of contrary evidence, courts generally will construe severance pay plans under ERISA as intended to "tide over" employees who must seek new jobs. *See Sly v. P.R. Mallo-*

Thus, it does not appear that the complaint states a claim under ERISA, even should Molyneux establish (1) that AGS should be considered to have been Molyneux's employer, (2) that ERISA covers the alleged AGS practice, (3) that the practice is one which qualifies as a "plan, fund, or program," and (4) that AGS is properly considered a fiduciary for the plan.

### Conclusion

For the foregoing reasons, the complaint is dismissed for lack of subject matter jurisdiction and failure to state a claim under ERISA.

The clerk shall enter judgment.

So Ordered.

*ry, supra,* 712 F.2d at 1211, 1213; *Pinto v. Zenith Radio Corp., supra,* 480 F.Supp. at 363; *Petrella v. N.L. Industries, Inc., supra.*