Lawrence SCHWARTZ, James A. Schultz, and William Gallagher, Plaintiffs,

v.

NEWSWEEK, INC., Defendant.

No. 84 Civ. 8074.

United States District Court, S.D. New York.

Dec. 8, 1986.

Marian C. Burnbaum, New York City for plaintiffs.

Michael Delikat, Baer, Marks & Uphman, New York City, for defendant.

WALKER, District Judge:

## INTRODUCTION

Plaintiffs Lawrence Schwartz ("Schwartz"), James A. Schultz ("Schultz") and William Gallagher ("Gallagher") have brought the instant action against Defendant Newsweek, Inc. ("Newsweek"), alleging causes of action based on the Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), as well as common law theories alleging breach of contract and fraud. Defendant moves for summary judgment, arguing that its conduct does not give rise to liability under ERISA, that ERISA preempts plaintiffs' contract claims, and that plaintiffs' have failed to make requisite showings on their state law fraud claim. For the reasons set forth below, defendant's motion for summary judgment is granted.

## STATEMENT OF FACTS

In 1980, Defendant Newsweek launched the magazine *Inside Sports*, a monthly publication devoted to spectator sports. Defendant hired Plaintiff Schwartz in December 1978 as an *Inside Sports* senior editor, at an initial salary of $35,000. In November 1979, Plaintiff Gallagher accepted an offer of $47,000 to work as another senior editor. Defendant added Plaintiff Schultz in September 1980, initially paying Schultz $33,800 for his work as the magazine's director of publicity.

*Inside Sports* began to face financial difficulties as early as April 1981. In November 1981, defendant's President Mark M. Edmiston ("Edmiston") announced at a meeting of *Inside Sports'* staff that defendant was seeking a purchaser for the magazine. Active Markets responded to defendant's sale offer, and in a January 8, 1982 memo and meeting, Edmiston informed the staff that defendant had reached an "agreement in principle" to sell the magazine to Active Markets.

Prior to the Active Markets sale, defendant's severance policy, as delineated in its collective bargaining agreement with the Newspaper Guild of New York, provided that workers employed in a division sold by Newsweek would receive compensation in one of two forms. Defendant would first have the option of using employees from the terminated division in another of its departments. If defendant could find no new employment for staffers of the terminated department, or if these employees' new departments provided jobs of no more than three months duration, the employees would receive severance pay.

Defendant amended this severance policy at the January 8, 1982 meeting where Edmiston announced the sale of *Inside Sports*. Specifically, defendant's then Director of Personnel Bruce Wallin stated that some *Inside Sports* staff members, including plaintiffs, could pursue a third means of compensation following the magazine's sale. Instead of receiving either employment in another Newsweek department or severance pay, employees sought by Active Markets could continue to work on *Inside Sports* for the magazine's purchaser. Employees who chose not to join Active Markets retained their right to a new job with defendant or severance pay. Edmiston also stated that, in his opinion, Active Markets would continue to publish *Inside Sports* for at least 18 months.

On January 28, the amended severance policy enunciated by Wallin was reduced to writing and provided to all three plaintiffs in a letter, which also specified the precise amounts of severance pay plaintiffs would receive if they declined a position with Active Markets and defendant could not employ them in a division other than *Inside Sports*. Plaintiffs accepted employment with *Active Markets* shortly after they received Wallin's January 28 note, as confirmed by another letter from Wallin to plaintiffs, dated February 1, 1982.

In November 1982, Active Markets halted publication of *Inside Sports* and declared bankruptcy, terminating plaintiffs and other *Inside Sports* staff members. Plaintiffs' termination thus occurred about nine months after their employment with Active Markets had begun.

Prior to the sale of *Inside Sports*, defendant had sold only one other publication, *Art News*. The *Art News* purchaser expressly declined to hire defendant's employees who had worked on this magazine, and consequently all of these employees received defendant's standard severance package, consisting of either new employment with defendant or severance pay.

### Applicability of ERISA

Defendant contends that its legal obligations toward plaintiffs are governed primarily, if not exclusively, by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Conversely, plaintiffs contend that defendant's severance policy falls outside the scope of ERISA coverage, and that common law contract and tort principles govern defendant's duties under the policy.

■ ERISA applies to any "employee welfare benefit plan," including employer-sponsored medical, job-training, and unemployment programs. 29 U.S.C. § 1002(1). The applicability of ERISA to defendant's unfunded severance pay policy is compelled by the Second Circuit Court of Appeals recent decision in *Gilbert v. Burlington, Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem., Roberts v. Burlington Industries, Inc.*, — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). Despite the absence of any reference to severance pay in the act, the *Gilbert* decision held that such policies fell within the ERISA category of unemployment benefits, explicitly covered by the act as a type of "employee welfare benefit plan." The *Gilbert* court stated:

> Although severance pay is often a reward for past service, it also serves the same purpose as unemployment benefits. When ties that bind an employee to his or her company are severed by the employer, unemployment for the employee—whether fleeting or permanent—is an inexorable consequence. Thus, in our view severance pay is an unemployment benefit and an unfunded severance pay policy constitutes an 'employee welfare benefit plan' under [29 U.S.C.] § 1002(1)(A).

*Id.* at 325. Other circuits similarly have held that ERISA applies to severance pay policies. *See e.g., Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1145 (4th Cir.1985), *aff'd mem., Brooks v. Burlington Industries, Inc.*, — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502–03 (9th Cir.1985).

■ Plaintiffs provide little argument that ERISA should not typically cover formal severance pay policies, but instead argue that the severance pay policy in the instant case appears insufficiently specific and comprehensive to qualify as an ERISA "plan." In determining whether various benefit policies fall within ERISA, courts should interpret the act's coverage broadly. *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir.1983). A court should be particularly unwilling to find that a benefit

plan falls outside ERISA coverage where an employer, like defendant in the instant case, argues that the act covers its plan. *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 325 (2d Cir.1985), *aff'd mem., Brooks v. Burlington Industries, Inc.*, — U.S. —, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

Two circuit court decisions foreclose plaintiff's argument that defendant's January 8, 1982 memorandum, describing plaintiffs' options as employment with Active Markets, employment with another defendant division, or severance pay, does not constitute a "plan" for the purposes of ERISA coverage. In *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209 (7th Cir.1983), the Seventh Circuit Court of Appeals held that ERISA applied to a severance pay policy which "was not result of nor a part of ... any collective bargaining agreement between ... [defendant] and organized representatives of its employees but rather was an internal policy statement." *Id.* at 1210 n. 1. Similarly, the Ninth Circuit Court of Appeals held that oral representations describing a severance pay policy may constitute an ERISA plan. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503–04 n. 1 (9th Cir.1985).

Accordingly, this Court finds that the severance pay policy described in defendant's January 8 meeting and January 28 letters constitutes an employee benefit plan for the purpose of ERISA coverage.

### *Liability Under ERISA*

■ ERISA provides that "a fiduciary shall discharge duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use...." 29 U.S.C. § 1104(a)(1)(B). "[A] court may intervene in the administration of an employee benefit plan, but should intervene only when the the trustees transgress their fiduciary duties by acting in an arbitrary

and capricious manner." *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir.1984); *see also Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1037 (2d Cir. 1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). Plaintiff contends that the modification of defendant's severance policy to include the option of continued employment with *Inside Sports* after Active Markets' purchase of the magazine constitutes such arbitrary and capricious conduct. Settled case law clearly precludes this argument.

In *Molyneux v. Arthur Guinness & Sons, P.L.C.*, 616 F.Supp. 240 (S.D.N.Y. 1985), a court in this district found that an employee, alleging facts similar to those of the instant case, failed to state a cause of action under ERISA. The *Molyneux* plaintiff brought suit for severance benefits after the defendant had sold the division in which the plaintiff had worked. In rejecting the plaintiff's claim, the district court wrote: "The decision not to pay severance benefits to former employees who after divestiture of a corporate division continue their work under the new ownership, without more, is not itself arbitrary, fradulent, or violative of fiduciary duties." *Id.* at 245. *See also Jung v. FMC Corp.*, 755 F.2d 708 (9th Cir.1985) (refusal to pay severance benefits to employees upon sale of their division does not provide employees with a cause of action under ERISA).

Sound policy supports applying these precedents to plaintiff's instant ERISA claim. To allow plaintiffs to recover on such a claim could induce employers to forego offering employees continued work with a division purchaser—even where employees would prefer such continued full-time work to a relatively small amount in severance pay. Limiting the options available to employees working in a purchased division would run counter to the central purpose of ERISA, which Congress designed to assure "employees that they would not be deprived of their reasonably-anticipated ... benefits...." *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1409 (2d Cir.1985), *cert. dismissed*, — U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Also, "[t]o award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention or goal of ... ERISA." *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir.1983) (quoting unpublished district court opinion in same case).

Accordingly, this Court grants defendant's motion for summary judgment on plaintiffs' ERISA claim for breach of fiduciary duty.

### ERISA Preemption of Plaintiff's Contract Claim

■ Plaintiffs also argue that defendant's failure to pay severance benefits gives rise to a state law action for breach of contract. Defendant does not address the merits of plaintiffs' claim, but instead argues that ERISA preempts plaintiffs' contract action.

This Court begins its analysis of this issue by noting that Congress clearly intended to displace a substantial body of state law regulating employee benefit plans when it enacted ERISA. The act established regulation of employee benefit plans "as exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Such broad preemption was designed to minimize "the need for interstate employers to administer their plans differently in each State in which they have employees." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 105, 103 S.Ct. 2890, 2904, 77 L.Ed.2d 490 (1983). Thus, the Second Circuit Court of Appeals recently observed that "[o]ther courts have found state law causes of action preempted when they were based on claims for relief under the common law of contracts.... To hold otherwise would undermine the uniformity in plan administration that the Act was designed to promote." *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 328 (2d Cir.1985) (citations omitted), *aff'd mem.*, *Roberts v. Burlington Industries, Inc.*,

— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

As the *Gilbert* opinion states, other courts have repeatedly held that ERISA preempts state law contract claims relating to an employee benefit plan, such as severance pay. For example, in *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1211 (8th Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), corporate officers brought suit alleging tortious interference with contractual relations under Missouri state law, after the corporation purchasing their previous employer terminated these officers and denied their claims for severance pay. The Eighth Circuit Court of Appeals held that ERISA preempted the officers' state law contract claims. *Id.* 1215–16. The Ninth Circuit Court of Appeals similarly found that ERISA preempted state contract claims brought pursuant to defendant's sale of a division which previously had employed plaintiffs. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356–57 (9th Cir.1984), *cert. de-*

*nied*, —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

■ Accordingly, this Court holds that ERISA preempts plaintiffs' state law contract claims, and thus grants defendant's motion for summary judgment on plaintiffs' contract claims.[1]

*Fraud*

■ Plaintiffs' instant action also includes a fraud claim, based on Edmiston's prediction that Active Markets, which actually published *Inside Sports* for about nine months, would publish the magazine for at least eighteen months. Defendant moves for summary judgment on this claim, arguing that plaintiffs have not made the showings necessary to bring a fraud action to trial under New York law. This Court finds that plaintiffs have failed to show that Edmiston's prediction constituted an actionable statement of fact, or that Edmiston made his prediction with fraudulent intent, and thus grants defendant's motion for summary judgment on plaintiff's fraud claim.[2]

---

1. Plaintiffs also seek to bring a cause of action for promissory estoppel, which under New York law may arise where a party has reasonably and foreseeably relied to his detriment on a defendant's "clear and unambiguous promise." *Power East Ltd. v. Transamerica Delaval, Inc.*, 558 F.Supp. 47, 50 (S.D.N.Y.1983), *aff'd mem.*, 742 F.2d 1439 (2d Cir.1983). Case law suggests that ERISA preempts promissory estoppel actions related to employee benefit plans. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

However, even if ERISA does not preempt plaintiffs' promissory estoppel action, under New York law plaintiffs bringing a promissory estoppel action must show that they have "suffered unconscionable injury." *D & N Boening v. Kirsch Beverages, Inc.*, 99 A.D.2d 522, 523–24, 471 N.Y.S.2d 299, 302 (2d Dep't 1984). A plaintiff's unemployment occurring after a change in jobs is, in and of itself, insufficient to warrant a finding of "unconscionable injury." *Ginsberg v. Fairfield-Noble Corp.*, 81 A.D.2d 318, 321, 440 N.Y.S.2d 222, 225 (1st Dep't 1981). Accordingly, plaintiffs' may not maintain an action for promissory estoppel in the instant case.

2. Although defendant raises no preemption argument with respect to plaintiffs' fraud claim, some authority suggests that ERISA preempts common law fraud actions relating to employee benefit plans. *See, e.g., Phillips v. Amoco Oil*

*Co.*, 799 F.2d 1464, 1470 (11th Cir.1986); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir. 1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). However, at least one decision in this district has allowed plaintiffs to bring common law fraud claims based on the same facts as an ERISA action. *Sixty-Five Security Plan v. Blue Cross & Blue Shield*, 583 F.Supp. 380, 390–91 (S.D.N.Y.1984), *reh'g denied*, 588 F.Supp. 119 (S.D.N.Y.1984).

This Court need not address whether ERISA preempts common law fraud actions relating to employee benefits plans, since plaintiffs' action based on Edmiston's prediction fails regardless of whether state law or ERISA applies. Under ERISA, an action for fraudulent misrepresentation is available where statements relating to an employee benefit plan are not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). *See Gors v. Venoy Palmer Market, Inc.*, 578 F.Supp. 365, 367–68 (E.D.Mich. 1984).

Under Section 1022, an employer need not state every detail of a plan with absolute precision to avoid liability. Instead, statements must be "sufficiently accurate and comprehensive to give fair notice to the participants...." *Morse v. Stanley*, 732 F.2d 1139, 1148 (2d Cir.1984). This Court finds that Wallin's January 28 letter,

Under New York case law, Edmiston's claim appears to constitute "an expression of opinion rather than fact" which "[a]s a matter of law ... cannot form the basis of a claim of misrepresentation." *George Backer Management Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 220, 385 N.E.2d 1062, 1067, 413 N.Y.S.2d 135, 140 (1978). In *Giblin v. Murphy,* 97 A.D.2d 668, 469 N.Y.S.2d 211 (3d Dep't 1983), an Appellate Division panel found that a purchaser's statement of a plan to operate his business profitably could not support a fraud action, since such representations "were promissory in nature and related to future actions." *Id.* at 670, 469 N.Y.S.2d at 214. *See also Vanderburgh v. Porter Sheet Metal Inc.,* 86 A.D.2d 688, 446 N.Y.S.2d 523 (3d Dep't 1982) (an employer's failure to maintain employee insurance policies, as promised, does not give rise to an action for fraud); *Althanus Corp. v. Travelers Insurance Co.,* 92 A.D.2d 830, 460 N.Y.S.2d 549 (1st Dep't 1983) (fraud action does not arise from defendant's statement that it desired a long-term computer equipment lease).

Second, plaintiffs' papers opposing the instant summary judgment motion show a dearth of evidence that an intent to deceive motivated Edmiston's prediction on the length of time during which Active Markets's would continue to publish *Inside Sports.* A fraud "claim based upon statements of future intention ... requires proof of a present intent to deceive." *Marcraft Recreation Corp. v. Francis Devlin Co.,* 506 F.Supp. 1081, 1087 (S.D.N.Y.1981).

■ Plaintiffs attempt to make an adequate showing of intent by alleging: "Mr. Edmiston, at the time he made those statements ... had not seen any proof that Active Markets had access to an amount of capital which could keep *Inside Sports* running for eighteen (18) months." However,

the requisite showing of intent to deceive is not satisfied "by mere carelessness. It is nothing less than guilty knowledge or willful ignorance." *Manufacturers & Traders Trust Co. v. Sapovitch,* 296 N.Y. 226, 229, 72 N.E.2d 166, 168 (1947), *reh'g denied,* 296 N.Y. 998, 73 N.E.2d 574 (1947). Plaintiffs produce no evidence showing that Edmiston knew or should have known of Active Markets' inability to continue long-term operation of *Inside Sports.*

Defendant's motion for summary judgment on plaintiffs' fraud claim is granted.

### Conclusion

Defendant's motion for summary judgment dismissing each of plaintiffs' claims is granted.

SO ORDERED.

---

which made no mention of an expected 18–month employment with Active Markets, provided plaintiffs with "fair notice" of their various options. To impose ERISA liability for inaccuracies in every casual, off-hand statement made by an employer, such as Edmiston's statement, would have the effect of muting employer discussion of employee benefit packages: a re-

sult difficult to reconcile with the disclosure required and encouraged by ERISA.

Since plaintiffs' cannot bring their fraud claim based on Edmiston's prediction to trial, either under ERISA or under state law, this Court need not determine whether ERISA preempts common law fraud claims related to an employee benefit plan.