Robert E. McINTYRE, Marguerite L. McIntyre, and Thoracic and Cardiovascular Surgery Associates, Inc., Plaintiffs,

v.

Leon P. OKUROWSKI, U.S. Boston Corp., U.S. Boston Capital Corp., U.S. Boston Services Corp., and U.S. Boston Financial Corp., Defendants.

Civ. A. No. 87–2660–T.

United States District Court, D. Massachusetts.

Jan. 5, 1989.

---

Dallas W. Haines, III, Sokol, Haines & Musgrave, Boston, Mass., for plaintiffs.

Laura Steinberg, Larry L. Varn, Sullivan & Worcester, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs, Dr. and Mrs. McIntyre, invested much of their life savings with defendant Okurowski and four defendant corporations with which he was affiliated.[1] Dr. McIntyre's company, plaintiff Thoracic and Cardiovascular Surgery Associates, Inc., also invested a substantial amount of money with defendants.[2] All of the investments eventually soured, and plaintiffs lost almost their entire investment. The Third Amended Complaint contains six counts alleging various frauds and breaches of fiduciary duties. Defendants have moved to dismiss Counts II, V, and VI.

### I.

■ Count II alleges common law breach of fiduciary duty. It is settled under Massachusetts law that "a simple stockbroker-customer relationship does not constitute a fiduciary relationship." *Lefkowitz v. Smith Barney, Harris Upham & Co.*, 804 F.2d 154, 155 (1st Cir.1986), *citing Brine v. Paine, Webber, Jackson & Curtis, Inc.*, 745 F.2d 100, 103 (1st Cir.1984); *Plumer v. Luce*, 310 Mass. 789, 795–96, 39 N.E.2d 961 (1942). Plaintiffs, however, contend that their relationship with defendants was much more intimate than that of a stockbroker and customer. They allege that "plaintiffs had little or no personal experience in managing money" (Third Amended Complaint ¶ 18), and that "defendant Okurowski ... visited the McIntyres' home, and urged that he and Dr. McIntyre have meetings in other places than an office setting, such as breakfast meetings at restaurants." (Third Amended Complaint ¶ 53). Even if proven, however, these facts would not establish a fiduciary relationship. As the court stated in *Vogelaar v. H.L. Robbins & Co.*, 348 Mass. 787, 788, 204 N.E.2d 461 (1965) (rescript opinion), allegations of minimal investment knowledge and blind reliance on investment advice "fall short of indicating a fiduciary (as distinguished from a business) relationship." Consequently, plaintiffs have failed to state a claim upon which relief can be granted in Count II of their Third Amended Complaint.

### II.

■ Next, defendants seek dismissal of Count V for lack of subject matter jurisdiction. Count V alleges a violation of the Employee Retirement Income Security Act (ERISA): 29 U.S.C. § 1001 et seq.

In order for there to be federal question jurisdiction over an ERISA claim, "the complaint must allege such facts as will show the establishment or maintenance of a 'plan, fund, or program' of the type covered by ERISA." *Molyneux v. Arthur Guiness and Sons, P.L.C.*, 616 F.Supp. 240, 243 (S.D.N.Y.1985), *quoting Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). In determining whether a plan, fund, or program has been established, "all reasonable factual inferences must be drawn in the plaintiff's favor." *Smith v. Kutchens*, No. 84–C–10331, slip op., 1985 WL 4263 (N.D.Ill., Nov. 27, 1985). For plaintiffs to avoid dismissal, the court must determine from the complaint that "plaintiffs may well be able to show [at trial] that a reasonable person could ascer-

---

1. The corporate defendants are: U.S. Boston Corporation; U.S. Boston Capital Corporation; U.S. Boston Services Corporation; and U.S. Boston Financial Corporation.

2. Plaintiffs' combined investment exceeded $300,000.

tain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits" of the alleged pension plan. *Donovan*, 688 F.2d at 1373. .

■ A conclusory statement in the complaint that the plan met the definition set out by ERISA—and nothing more—has been found on at least one occasion to be lacking. *See Molyneux*, 616 F.Supp. at 243. Here, however, the Third Amended Complaint contains more than the simple assertion that the plans were qualified under ERISA. It alleges: 1) that the plans were "to be funded by T & C Surgery Associates" (Third Amended Complaint ¶ 37); 2) that the two pension plans were to be "administered independently by U.S. Boston Services and subsequently by U.S. Boston Fiduciary, however cash payments into the funds were made through U.S. Boston Corporation" (Third Amended Complaint ¶ 38); 3) that the pension plan funds were to be invested "in the limited partnership of Petro–Lewis." (Third Amended Complaint ¶ 39); and 4) that Dr. McIntyre was not only the named trustee of the plan, but also one of its beneficiaries. (Third Amended Complaint ¶¶ 57–60).[3] These allegations in combination are far more than a simple assertion that the plan is qualified under ERISA.

The court dealt with a similar situation in *Smith*. There, the complaint also did not describe in any detail the plans themselves or their intended beneficiaries. In addition to a conclusory statement of ERISA qualification, it contained only a brief mention of the plans' co-trustees who also were beneficiaries under the plans.[4] Nevertheless, the court denied the motion to dismiss

stating that the few facts contained in the complaint were more than enough to create "the reasonable inference ... that the plans do fall within the ambit of ERISA." *Smith*, slip op. at WESTLAW p. 4. Here too, the facts alleged in the complaint are sufficient to establish federal subject matter jurisdiction over the claim in accordance with ERISA. Consequently, the motion to dismiss Count V is denied.

### III.

■ Lastly, defendants have moved to dismiss Count VI of the Third Amended Complaint for failure to state a claim upon which relief can be granted. Count VI alleges civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1961 et seq. This count includes violations of both 18 U.S.C. § 1962(a) and § 1962(c). Because plaintiffs have failed to plead a pattern of racketeering activity sufficient to state a claim under RICO, both statutory claims contained in Count VI must be dismissed.

Any RICO claim under 18 U.S.C. § 1962(a), (c) must allege a "pattern of racketeering activity" to survive a motion to dismiss. *See Eastern Corporate Fed. Cred. v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1533 (D.Mass.1986). Allegations of isolated or sporadic activity are not enough. Rather, there must be "continuing activity" alleged, such that the "factor of *continuity plus relationship* ... combines to produce a pattern." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1984), *quoting* S.Rep. No. 91–617, p. 158 (1969). Accordingly, the First Circuit recently noted that "[r]acketeering

---

**3.** Nothing in ERISA prevents the named trustee who is also a beneficiary from suing an investment advisor for violation of the advisor's fiduciary obligation to the plan. ERISA specifically allows for the appointment by the trustee of "an investment manager ... to manage (including the power to acquire and dispose of) any assets of a plan." 29 U.S.C. § 1102(c)(3). And as long as that manager has either "full investment discretion ... [or] gives investment advice," *Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183, 1189 (N.D.Ill.1981), as is the case here, he is a fiduciary under ERISA. *See also Chicago Board Options Exchange v. Connecticut*

*General Life Insurance Co.*, 713 F.2d 254, 260 (7th Cir.1983) ("It is clear that Congress intended the definition of fiduciary under ERISA to be broad.").

**4.** There is also a parallel between the types of pension plans involved in both cases. The plans in *Smith*, much like the ones set up for the doctor in this case, were "plans in which the participants are self-employed individuals, rather than employees." *Smith*, slip op. at WESTLAW p. 2, n. 1.

acts ... do not constitute a pattern simply because they number two or more. The constituent elements must be sufficiently related to one another and threaten to be more than an isolated occurrence." *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 29 (1st Cir.1987).

Nothing in the Third Amended Complaint is sufficient to establish this sort of pattern. In fact, the allegations in the complaint are much more in line with what the First Circuit referred to as "an isolated occurrence." *Id.* Although the alleged fraud continued for quite a few years, at all times the alleged victims—plaintiffs—remained constant, the alleged method of perpetration—misrepresentation combined with bad investment advice—remained constant, and the alleged goals of the scheme—to separate plaintiffs from their money—remained constant. The situation here is remarkably similar to that in *Roberts v. Smith Barney, Harris Upham & Co., Inc.*, 653 F.Supp. 406 (D.Mass.1986) (Skinner, J.):

> The Roberts are the only victims of the alleged scheme. The sole participant was a single broker at Smith Barney. The purpose and result of the alleged activity was quite specific, to defraud these plaintiffs, and the alleged method of commission was at all times the same, the churning and manipulation of their trading accounts. And while the plaintiffs allege numerous criminal acts by Smith Barney, those acts all arose out of a single contractual transaction, the Roberts' authorization of Smith Barney to trade their accounts. Finally, there are no allegations that this activity is likely to occur in other contexts, or that it will continue to be a threat to society. Nothing in the complaint suggests that the defendant, Smith Barney, regularly engages in criminal activities. The only factor that favors treating Smith Bar-

ney's activities as a pattern is that the alleged activity continued for twenty-two months. However, time alone does not transform Smith Barney's acts into separate, continuous activities. [Citation omitted]. In light of the many factors suggesting that Smith Barney did not engage in 'planned, ongoing, continuing crime', I find that plaintiffs have failed to allege a 'pattern of racketeering activity.'

653 F.Supp. at 412–3. Judge Skinner's cogent analysis is persuasive and this court adopts it.

Plaintiffs have failed to state a claim upon which relief can be granted in Count VI of the Third Amended Complaint, and it must be dismissed.[5]

An order will issue.

### ORDER

For the reasons stated in the accompanying memorandum, defendants' motion to dismiss Count II of the Third Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is hereby granted.

Defendants' motion to dismiss Count V of the Third Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) is hereby denied.

Defendants' motion to dismiss Count VI of the Third Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is hereby granted.

It is so ordered.

---

5. Additionally, there are independent grounds to dismiss each of the two alleged RICO violations contained in Count VI of the Third Amended Complaint. To state a claim under 18 U.S.C. § 1962(a), the complaint must allege that plaintiffs were injured by the "use or investment of income derived from racketeering." *Eastern Corporate Federal Credit Union*, 639 F.Supp. at 1537. Here, the allegations are insufficient to show such injury.

To state a claim under 18 U.S.C. § 1962(c), the complaint must allege the existence of "an entity distinct from the enterprise." *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 29 (1st Cir.1986). No such distinct entity has been alleged here.