Emmanuel E. **CRESPO**, Plaintiff,

v.

**CANDELA LASER CORPORATION**, Defendant.

Civ. A. No. 90–11563–Y.

United States District Court, D. Massachusetts.

Jan. 9, 1992.

Morris M. Goldings, Alice E. Moore, Mahoney, Hawkes & Goldings, Boston, Mass., for plaintiff.

Jason Berger, Barbara A. Fain, Testa, Hurwitz & Thibeault, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. INTRODUCTION

This action for recovery of employee severance benefits raises a question of growing importance in the federal courts concerning the limits of federal preemption of such actions under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988). ERISA cases generally, and the removal of associated state law causes of action to the federal courts in particular, constitute a burgeoning area of the federal courts' caseload.[1]

This single-count breach of contract claim was originally filed by the plaintiff Emmanuel Crespo ("Crespo") in the Massachusetts Superior Court for the County of Middlesex. The defendant Candela Laser Corporation ("Candela") timely removed the action to this Court pursuant to 28 U.S.C. § 1441 (1988), asserting original jurisdiction over a federal question under 28 U.S.C. § 1331 (1988) and 29 U.S.C. § 1132(f) (1988), and under section 3(1) of

---

1. *See* Robert E. Keeton, *Judging* 37 (1990).

ERISA, 29 U.S.C. § 1002(1).[2] Subsequently, Candela filed the present motion to dismiss the breach of contract claim as preempted by ERISA. Crespo's Motion in Opposition was filed on August 8, 1990. One week later, on August 15, 1990, he filed his Motion to File a First Amended Complaint to add an ERISA count.[3]

Upon hearing the motion to dismiss, this Court expressed serious doubts as to whether it had subject matter jurisdiction over this action, an issue which the parties had not briefed but had simply assumed. Specifically, the Court stated its skepticism that the alleged severance "plan" in question constituted a bona fide "plan" as contemplated by ERISA. If an ERISA severance plan does not exist, then this Court does not have removal jurisdiction over the action. Rather than dismiss the complaint, however, the Court allowed the parties 30 days in which to submit briefs and affidavits with supporting facts with respect to this threshold issue. Both parties filed briefs but no affidavits, and no new facts have been brought to the Court's attention.

## II.  FACTS

Taking the allegations in the complaint and amended complaint as true for purposes of the motion to dismiss, Crespo has

alleged that he was employed by Candela as its general counsel from August 1987 through June 23, 1989, and as its corporate secretary beginning in May 1988. In February 1989, Candela implemented salary reductions for all of its employees, including Crespo. Between January 1989 and June 1989, Candela terminated "either for cause or for layoff" several other unnamed officer employees. On May 31, 1989, Candela terminated Crespo, effective June 23, 1989.

Crespo claims that upon their termination, the other officer employees were granted "standard" severance benefits more generous than those he received, i.e., from three to six months salary, as opposed to his eight weeks' severance pay. He also claims that while he was given no extended health and life insurance benefits, the other officer employees were afforded such benefits "in accordance with Candela's Separate Officer Severance Policy." Complaint ¶ 9. *See also* Exhibit A.[4]

Crespo also claims entitlement to continued payment of health and life insurance payments pursuant to the severance policy. Candela argues that, even independent of the severance benefits in question, those insurance benefits relate to employee benefit plans and are therefore similarly preempted by ERISA. Crespo further

---

**2.** Claims under the ERISA statute need no jurisdictionally minimum amount in controversy. Under section 1003(a)(1), coverage applies "to any employee benefit plan if it is established or maintained ... by any employer engaged in commerce or in any industry or activity affecting commerce ..." 29 U.S.C. § 1003(a)(1). "Because every employee welfare-benefit plan has at least a minimal effect on interstate commerce, ERISA applies to all employee welfare-benefit plans." *Comprehensive Care Corp. v. Doughtry,* 682 F.Supp. 516, 517 (S.D.Fla.1988).

**3.** In that motion, Crespo voluntarily moved to dismiss the individual defendant, Gerald Puorro. Crespo has not moved to remand this case to state court but it ought be remembered that he did not seek a federal forum in the first place. He only sought his day in state court to vindicate an ordinary contract claim. Indeed, at oral argument, Crespo's attorney candidly acknowledged that the ERISA claim alleged in the First Amended Complaint was defensive in nature: to provide Crespo with a surviving cause of action in the event that this Court were to rule that the contract claim was preempted.

**4.** Exhibit A, which purports to be such an "Officers Severance Policy," reads in its entirety as follows:

*Officers Severance Policy*

Three months severance at salary including health benefits but no vacation or sick pay accrued. Weekly payment schedule. Life insurance premiums paid.

Another three months at 60% of salary up to the time new employment is found. No accrual of vacation or sick pay and no payment of insurance premiums. Weekly payment schedule.

There is no allegation in Crespo's complaint of when or under what circumstances or to whom Exhibit A was issued. Crespo's First Amended Complaint for the first time affirmatively alleges that "The Corporation maintains an Officer Severance Policy", referring to the same Exhibit A as well as to a new Exhibit B, Candela's full Personnel Policy Manual. The Manual nowhere mentions such an Officer Severance Policy, nor indeed any severance policy, though it mentions several other benefits connected with employee terminations.

claims that the failure to make the alleged severance payments forced him to sell stock valued at over $44,000.

Finally, Crespo claims that he was denied a retroactive salary increase to restore earlier cuts that Candela announced to all employees on June 16, 1989, before the date of his termination. Candela concedes that this alleged back pay claim is not preempted by ERISA.

## III. ANALYSIS

The Employee Retirement Income Security Act of 1974 has been called "the most sweeping federal preemption statute ever enacted by Congress." *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1146 (4th Cir.1985), *aff'd sub nom., Brooks v. Burlington Indus., Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986) *and cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).[5] The statute has a two-fold intent: to protect employees from the consequences of underfunding of pension and welfare benefit plans, as well as to protect employers from inconsistent state and local regulation of such plans, since their operation is increasingly interstate. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 90–91, 98–99, 103 S.Ct. 2890, 2896–97, 2900–01, 77 L.Ed.2d 490 (1983). *See also Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir.1985).[6] Such conflicting and inconsistent state regulation may arise not only from regulatory laws but also from state common law actions. *Scott*, 754 F.2d at 1502. *See also Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900–01 (ERISA preemption is not limited to state laws specifically designed to affect employee benefit plans).

ERISA's key preemption provision, section 514(a), 29 U.S.C. § 1144(a), provides that, with certain exceptions,[7] the statute "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." The Supreme Court has held that the words "relate to" in section 1144(a) should be construed expansively: "[a] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900. Congress expressly envisioned that from section 514(a) the courts would create a body of federal common law which would supersede not only state statutory regulation of employee benefit plans but also state common law actions, insofar as they "arise from the administration of such benefit plans." *Scott*, 754 F.2d at 1504.

Notwithstanding the statute's broad preemptive intent, underlying any assertion that ERISA preempts a state law claim for recovery of employee benefits is necessarily the assumption that, as matter of law, the benefits in question qualify as a welfare benefit *plan* within the meaning of ERISA. As the Supreme Court has recently explained, "[t]he words 'benefit' and 'plan' are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another. Given the basic difference between a 'benefit' and a 'plan,' Congress' choice of language is significant in its preemption of only the latter." *Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (holding that ERISA did not preempt a state statute requiring employers to make a single lump-sum severance payment to employees laid off in a plant closing, where the employer had no benefit plan—no policy or practice of its own to make severance payments). "Some severance benefit obligations by their nature necessitate an ongoing admin-

---

**5.** Representative John H. Dent, a key House sponsor of ERISA, described its express preemption provision as ERISA's "crowning achievement." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (citing legislative history). *See also Franchise Tax Bd. v. Constr. Laborer's Vacation Trust*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983) (ERISA's preemption provisions are "virtually unique").

**6.** ERISA triggers certain reporting, disclosure, and fiduciary obligations with respect to each employee benefit plan and requires the payment of benefits in accordance with the terms of the plan. *See* ERISA §§ 101–111, 401–414, 29 U.S.C. §§ 1021–1031, 1101–1114.

**7.** The exceptions provided in section 1144(b) relate to state criminal, banking, and insurance laws and to multiple employer welfare benefit plans, and are not relevant here.

istrative scheme, but others do not. Those that do not ... simply do not involve a state law that 'relate[s] to' an employee benefit 'plan.'" *Id.* at 18, 107 S.Ct. at 2221. Thus, if no such plan is established on the basis of the facts alleged, then the federal regulatory concerns of ERISA are not implicated, and a federal court has no jurisdiction over the claim. "Disputes concerning severance pay may, but do not necessarily, implicate ERISA and support federal jurisdiction. To establish federal jurisdiction, the complaint must allege such facts as will show the establishment or maintenance of a 'plan, fund or program' of the type covered by ERISA." *Molyneux v. Arthur Guinness and Sons, P.L.C.,* 616 F.Supp. 240, 243 (S.D.N.Y.1985) (Absence of adequate allegations of such an ERISA plan; thus no subject matter jurisdiction). The parties here cannot confer subject matter jurisdiction on this Court; the Court must conduct its own inquiry into this question. *See id.*

Two fundamental problems have arisen in construing ERISA's broadly-worded pre-emption provision. First, "ERISA does not contain a clear definition of the word 'plan.'" *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985).[8] Second, "[t]he type of relationship any given state law-based legal claim is required to have with an employee benefit plan in order to apply ERISA's preemption provision has been the subject of a fair amount of debate." *Parisi v. Trustees of Hampshire College,* 711

F.Supp. 57, 61 (D.Mass.1989) (Freedman, C.J.) Thus, "the lower courts have had considerable problems applying the 'relate to' language of Section 514(a) uniformly." *Schlenz v. United Airlines, Inc.,* 678 F.Supp. 230, 233 (N.D.Cal.1988). *See also Totton v. New York Life Ins. Co.,* 685 F.Supp. 27, 29 (D.Conn.1987).

"[S]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Parisi,* 711 F.Supp. at 61 (citing *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). *See, e.g., Jervis v. Elerding,* 504 F.Supp. 606 (C.D.Cal.1980) (dismissing for lack of subject matter jurisdiction a claim for post-termination retirement benefits, and distinguishing between an employer promise, as part of a written employment agreement, to pay certain covered benefits and a "plan" for paying benefits).

■ At the threshold, the parties here do not dispute the now-settled point that a severance plan is a type of employee welfare benefit plan contemplated by section 3(1) of ERISA, 29 U.S.C. § 1002(1)(B).[9] Nor, apparently, do they dispute that Candela's Personnel Policy Manual (Exhibit B to First Amended Complaint) is not in itself a basis for recovery of severance benefits (since it nowhere mentions such benefits).[10] Rather, the focus of dispute is the purported severance policy spelled out

---

8. "Neither Congress nor the Department of Labor [to which ERISA expressly delegates the power to promulgate regulations] has been very specific about what constitutes a 'plan, fund or program' for purposes of § 1002." *Petrella v. NL Indus., Inc.,* 529 F.Supp. 1357, 1362 (D.N.J. 1982).

9. ERISA broadly defines "employee welfare benefit plan" to include:

Any plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ... or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). A Department of Labor regulation has interpreted subsection (B) to include severance pay plans, since section 186(c) expressly mentions "severance benefits." *See* 29 C.F.R. § 2510.3–1(a)(3) (1991). *See Holland v. Burlington Indus., Inc.,* 772 F.2d 1140; *Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320 (2nd Cir. 1985), *aff'd sub nom. Roberts v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). *See also Ft. Halifax Packing Co.,* 482 U.S. at 7 n. 5, 17, 107 S.Ct. at 2215 n. 5, 2220. *Petrella,* 529 F.Supp. at 1361–62.

10. As Candela points out in its reply brief, Crespo goes to great lengths in his Memorandum in Opposition to the Motion to Dismiss to argue that the Manual cannot constitute a severance benefit plan, failing adequately to address whether the severance policy and practice could amount to such a plan.

in "Officers Severance Policy" (Exhibit A to the Complaint and First Amended Complaint), combined with Candela's alleged practice of paying severance benefits to officers pursuant to that policy.[11]

Thus, if there was an ERISA plan for payment of severance benefits at Candela, it must have been pursuant to the "Officers Severance Policy" and the alleged payment of such benefits in practice.[12] Candela relies heavily on certain cases in which courts have held an ERISA plan established by "an employer's pattern or practice of providing similarly-situated employees with consistent or standard severance benefits upon termination." Defendant's Reply to Plaintiff's Opposition at 3–4. Claims for severance benefits, whether brought under ERISA or under state common law theories, frequently arise where numerous employees are affected by a sale of corporate assets or of a corporate division to a successor employer. Particularly where a large number of employees is involved, there is serious risk that an employer faced with large severance liability may default on an obligation to provide severance pay, a type of default which is "a central concern of" ERISA. *Scott*, 754 F.2d at 1503.

In *Scott*, 101 salaried employees sued on state contract and tort theories when their employer denied them severance pay claimed upon a sale of the corporation. The Ninth Circuit affirmed the district court's dismissal of the state claims without prejudice to any rights the plaintiffs might have had under ERISA. The court rejected the plaintiff employees' claim that the employer's alleged promise to pay severance benefits, primarily based on oral representations and previous conduct, was not a "plan" within the meaning of ERISA, concluding that severance pay funded out of an employer's general assets and not a special fund may, even so, amount to an ERISA employee benefit plan. The court found sufficient specific allegations in the complaint of the employer's past practice of paying scheduled severance benefits according to employees' salary and length of service. *Id.* at 1504 and n. 2. The court in *Scott* acknowledged, however, that ERISA's lack of a clear definition of the word "plan" created some difficulty in reaching its result, and it expressly declined to formulate a minimum that must be alleged to justify ERISA preemption. *Id.* at 1503, 1504. "[A] mere allegation that an employer ... ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage.... Such an allegation fails to allege the 'establishment' of a plan." *Id.*

Candela also cites *Petrella v. NL Indus., Inc.*, 529 F.Supp. 1357 (D.N.J.1982), in

---

**11.** *Id.* Notwithstanding arguments to the contrary in his Memorandum in Opposition, Crespo in his First Amended Complaint now appears to concede the existence of "*an established employee welfare benefit plan*" based on Candela's alleged severance policy and practice (emphasis added). *Compare* Plaintiff's Opposition at 6–7 with Amended Complaint ¶ 23. *See* Reply to Plaintiff's Opposition at 3 n. 2 and 7 n. 5.

Ordinarily, a federal court may not exercise removal jurisdiction solely on the basis of a defense not appearing on the face of a well-pleaded complaint. *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The Supreme Court has recently held, under a corollary to the *Mottley* rule, that Congress has so clearly preempted the area of employee welfare benefits that a claim purporting to raise only state law causes of action for recovery of such benefits may nonetheless properly be removed and recharacterized as raising a federal question under ERISA. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *See also Fitzgerald v. Codex Corp.*, 882 F.2d 586, 587 (1st Cir.1989) (citing *Taylor*).

Yet *Taylor* does not necessarily settle the question of this Court's subject matter jurisdiction. Here, removal is proper under 29 U.S.C. § 1441(a) only if the Court would have had original jurisdiction over the claim. The reasoning of *Taylor* presumes that a defendant *has* an ERISA plan in the first place. Neither in *Taylor* nor in *Fitzgerald* was there any question that the employer had a benefit plan within the meaning of ERISA; the only question was whether the state law claim was thereby preempted.

**12.** Crespo's allegations concerning Candela's "institutional policy to develop and maintain practical and uniform criteria for wage and salary administration throughout the Company" are irrelevant since ERISA does not cover such wage and salary matters. *Schlenz*, 678 F.Supp. at 232.

which 14 salaried employees brought a multi-count ERISA action against both their employer and the Employee Benefit and Retirement Plan of the employer for wrongful deprivation of various benefits, including severance pay, vacation pay, and pension benefits, upon the sale of a corporate division. Denying the employer's motion for summary judgment, the court found that the plaintiffs' affidavits, viewed in the light most favorable to them, established the existence of an ERISA plan from the employer's past practice of paying every previously terminated employee severance benefits according to length of service as a "farewell bonus."

The court in *Petrella* also considered the employer's unpublished, internal policy statement which provided, as a discretionary matter, for varying separation allowances based upon length of service, and set forth the standards for granting such allowances. The court determined that though the discretionary language of the plan did not by itself entitle the plaintiffs to severance pay, the employer's conduct in administering the plan might well do so. *Id.* at 1362.

Perhaps the most influential general statement of criteria for inferring the existence of an ERISA plan was made in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (*en banc*), a case frequently cited by the lower courts. Under that formulation, the presence of an employee benefit plan can be established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373. The *Donovan* court found evidence of such a plan in the employer's purchase of a group health insurance policy covering a class of employees. *Id.* at 1373–75.

Candela argues that Crespo's allegations meet the above *Donovan* criteria:

"[T]he intended benefits were severance pay and insurance coverage of a certain duration and in an amount based upon an employee's salary, ... the intended beneficiaries were officer employees terminated by Candela, ... the alleged source of financing was Candela itself, and ... the receipt of benefits was to be automatic upon termination."

Defendant's Reply to Plaintiff's Opposition at 5.

These assertions are plausible, particularly as to the duration and calculation of the benefits, though the Court observes that the alleged plan contains neither length of service requirement, nor a 'not for cause' provision, contrary to every other severance claim case of which it is aware. Yet in other respects the allegations of a 'plan' are disturbingly conclusory as to the "surrounding circumstances" referred to in *Donovan*. Both Crespo and Candela ask the Court to assume jurisdiction of this case on the basis of 1) a purported "Officers Severance Policy" (Exhibit A), devoid of more specific supporting allegations as to when or under what circumstances or to whom this "policy" was published; and 2) assertions on information and belief that several unnamed other "officers and employees" received greater severance payments than Crespo pursuant to the policy. Here, therefore, the class of intended beneficiaries is not at all clear.

The *Scott* court cautioned that "[a] mere allegation that an employer ... ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage." *Scott*, 754 F.2d at 1504 (citing *Donovan*, 688 F.2d at 1372–73). *Accord, Molyneux*, 616 F.Supp. at 243 (also citing *Donovan*, 688 F.2d at 1373). The court in *Molyneux* was disturbed by the conclusory allegations of a "policy or plan" alleged in an affidavit attached to the complaint: "It states no more than that 'several' employees of the alleged 'group' have received severance payments." *Id.* at 244 n. 5. Partly on that basis, but also because there was no written plan, the *Molyneux* court found subject matter jurisdiction lacking. Here, the allegations as to both the policy and the practice of severance payments are conclusory.

Candela's assertion that "the source of financing was Candela itself" is not self-evident. A primary purpose of ERISA is

to protect the administrative and fiscal integrity of employee benefit plans, and to protect employees from default in payment of benefits. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). *Donovan* noted the importance of "direct or circumstantial evidence that the decision [to provide benefits] has become a reality—e.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists...." *Donovan,* 688 F.2d at 1373. No such standards are met here. While a severance pay plan may be funded from an employer's general assets rather than a special fund, *Scott,* 754 F.2d at 1502–03, this Court has been provided with no "direct or circumstantial evidence that the decision [to provide benefits] has become a reality...." *Donovan,* 688 F.2d at 1373.

Even so, Candela argues that the *Donovan* indicia for an ERISA plan should not be applied strictly here since that case "did not establish what a complaint must state on its face for a federal court to exercise subject matter jurisdiction." Defendant's Memorandum in Support of Removal at 8. Instead, Candela contends, "[t]he general rule, ... is that a complaint should be liberally construed for jurisdictional purposes when Congress intended that a piece of federal legislation broadly preempt an area of law." *Id.* It cites two First Circuit cases for this proposition, *Fitzgerald v. Codex Corp.,* 882 F.2d 586 (1st Cir.1989), and *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 3–4 (1st Cir.1983), *cert. denied* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983).

After considerable reflection upon Candela's submission, this Court concludes that neither these First Circuit cases, nor the severance pay cases from other circuits discussed above, compel the result Candela urges here. In *Fitzgerald,* an employee brought an action for retaliatory discharge in state court, alleging that the discharge resulted from the attempt of his former wife to collect health benefits under the Codex health plan. As here, Codex removed the case to federal court on the ground that Fitzgerald's claims related to an employee benefit plan subject to ERISA. Codex then moved for dismissal on preemption grounds. The district court dismissed the complaint. The First Circuit reversed and remanded to the district court, finding that the case was properly removed since it fell within the civil enforcement provisions of section 510 of ERISA.[13]

> Fitzgerald's complaint is grounded upon Codex's alleged wrongful motivation in terminating his employment: to avoid payment under an ERISA plan to Fitzgerald's former wife. This claim has much more than the requisite 'connection or reference' to an ERISA plan. *Shaw v. Delta Airlines* [sic], 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). *Its focus is Codex's interference with alleged benefit rights.* This is precisely the type of action that section 510 sought to cover and that is essential to the Act's protection.

*Fitzgerald,* 882 F.2d at 588 (emphasis added).

Unlike the plaintiff in *Fitzgerald,* Crespo does not claim that Candela deprived him of severance benefits out of any wrongful motive, but only that as one result of his termination he has not recovered all severance benefits due him. Moreover, the allegation of the complaint in *Fitzgerald* raised no question concerning the existence of an ERISA plan but only whether Fitzgerald had standing to enforce the non-retaliation provisions of the Act.

The complaint in *Bonanno* involved alleged violations not of ERISA but of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 141–187 (1988). There, an employer's state tort claim for alleged illegal secondary boycott activities

---

**13.** That section makes it unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ... 29 U.S.C. § 1140.

was successfully removed to the federal court. The court found sufficient the mere allegation on the face of the state complaint that *Bonanno* was "in an industry affecting [interstate] commerce," a requirement for coverage under the LMRA. The court was able to infer jurisdiction from another allegation in the complaint, that the parties had met several times with the Federal Mediation and Conciliation Service, a service available only where substantial disruption of interstate commerce is threatened. *Bonanno*, 708 F.2d at 3–4. Here, in contrast, Candela asks this Court to infer subject matter jurisdiction from the barest allegations of an ERISA plan in the complaint.

Candela further insists that the test for this Court's subject matter jurisdiction is whether the claim is "substantial," or "essentially federal in character" or whether "an allegation, even if it is conclusory, serves to raise a federal question." Defendant's Memorandum in Support of Removal at 10. The federal question here, Candela asserts is "whether is [sic] the alleged plan is in fact a 'plan' within the meaning of ERISA. It matters not whether the plaintiff ultimately could prove that it is." *Id.* In effect, Candela appears to argue that, because under ERISA Congress has chosen to occupy the field with respect to employee benefits, subject matter jurisdiction ought be presumed until such time as the plaintiff ultimately fails to prove his case on the merits.

■ Candela confuses preemption with removal jurisdiction; the latter must be established before the former may be addressed. Candela has thus "put the cart before the horse, for it is only after this Court's removal jurisdiction is established that it can address the merits of the preemption controversy." *Austin v. New England Tel. & Tel. Co.*, 644 F.Supp. 763, 765 (D.Mass.1986). *Austin* rejected the similar argument of a defendant and remanded the state law claim, citing *Fran-*

*chise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 7, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983).

Although *Austin* arose under section 301 of the Labor–Management Relations Act, its analysis is fully applicable here since the United States Supreme Court uses a similar standard for removal jurisdiction under both the LMRA and ERISA.[14] *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (LMRA); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA). *See also Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1330 (6th Cir.) ("The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under the NLRA does *not* establish that they are removable to federal court." [citing *Caterpillar*, 482 U.S. at 398, 107 S.Ct. at 2432] [emphasis in *Smolarek*], *cert. denied*, 493 U.S. 992 [110 S.Ct. 539, 107 L.Ed.2d 537 (1989)] ).

Accordingly, this Court must reject Candela's sweeping assertion of removal jurisdiction, even in the context of ERISA's broad preemption provision, absent more substantial evidence of an ERISA plan. In both *Fitzgerald* and *Bonanno* the jurisdictional allegations were substantial and detailed. This Court, at oral argument, made clear its concerns over the inadequacy of the allegations of an ERISA plan. Yet the parties have largely reiterated their earlier legal arguments, presenting no additional facts through affidavits or otherwise that might persuade the Court that such a plan exists. Unlike the employers in *Scott* and *Petrella*, Candela has vigorously argued from the beginning that it maintains a severance plan covered by ERISA. Yet Candela has not come forward here with sufficient allegations of such a plan, though it is uniquely in the position to provide the Court with evidence of a plan and has been given the opportunity to do so. Surely this Court can require a defen-

---

**14.** Indeed, the "complete preemption" doctrine spelled out in *Taylor*, upon which Candela relies, expressly derives from the exception to the well-pleaded complaint rule which was first an-

nounced in the LMRA context. *Avco Corp. v. Aero Lodge No. 735, etc.*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968).

dant such as Candela to establish the jurisdictional basis for removal.

As one court has recently explained:

... the complete preemption doctrine is not [at bottom] a preemption doctrine [at all] but rather a federal jurisdiction doctrine. Thus, a case must be remanded to state court if the sole basis for federal jurisdiction is a preemption defense and if the federal court finds that the preemption is insufficiently complete to confer federal question jurisdiction. This jurisdictional decision by the federal court does not preclude the state court from finding that the state law cause of action is preempted by federal law. In such an event the state court will simply apply federal law in resolving the dispute.

*Lister v. Stark,* 890 F.2d 941, 943 n. 1 (7th Cir.1989), *cert. denied,* — U.S. ——, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

"Quite clearly, there must be a point beyond which ERISA was not designed to reach." *Totton v. New York Life Insurance Co.,* 685 F.Supp. 27, 30 (D.Conn.1987) (citing *Morningstar v. Meijer, Inc.,* 662 F.Supp. 555 [E.D.Mich.1987]). Though this Court does not set a standard more precise than that delineated in *Donovan,* it concludes that holding for Candela here would permit removal upon even the most conclusory allegations of employer benefits, thereby unnecessarily involving the federal courts in claims that stretch ERISA preemption beyond any conceivable purpose envisioned by Congress.

Candela suffers no injustice through a remand of this case to the Massachusetts Superior Court. For Crespo to prevail on his ERISA claim in state court, he will still bear the same heavy burden of proof under federal law as he would in this Court.[15] State courts are expressly given concurrent jurisdiction under ERISA to rule on federal claims. 29 U.S.C. § 1132(e)(1). If, after discovery, Candela can convince the Superior Court that a severance plan exists within the meaning of ERISA and that the contract claim is preempted, that court can rule accordingly.[16] After all, "[t]he supremacy clause of the Constitution, which is the basis for the preemption argument, is concerned with promoting the supremacy of federal law, not federal courts." *Nashoba Communications v. Town of Danvers,* 893 F.2d 435, 440 (1st Cir.1990) (citing *Cablevision of Boston Ltd. Partnership v. Flynn,* 710 F.Supp. 23, 26 [D.Mass.] *aff'd,* 889 F.2d 377 [1st Cir.1989]). *See also Austin v. New England Tel. & Tel. Co.,* 644 F.Supp. at 769. Significantly, Candela has not argued that allowing Crespo's action to proceed in the state court would subject it to conflicting or inconsistent state regulation of any such plan as may exist.

## IV. CONCLUSION

In sum, having thoroughly considered the parties' legal arguments on this issue, this Court is not persuaded that the alleged severance benefits in question constitute a benefits plan within the meaning of ERISA sufficient to support federal removal jurisdiction, and the matter must therefore be remanded to the Superior Court. In the absence of jurisdiction, this Court does not, indeed cannot, express any opinion concerning whether Crespo's purported ERISA claim actually states a cause of action under Fed.R.Civ.P. 12(b)(6). That is a question different from the issue of removal jurisdiction. Under section 1132(e)(1) of ERISA, state courts have jurisdiction concurrent with federal courts over ERISA claims. The Superior Court may, of course, consider whether the federal ERISA claim pleaded in Crespo's Amended Complaint actually states a cause of action pursuant to Mass.R.Civ.P. 12(b)(6) and, if it

---

15. Of course, in either state or federal court, Crespo would be required to prove as one element of his ERISA claim the existence of an ERISA plan. But that proof goes to preemption on the merits, i.e., whether the state claims can survive independent of the ERISA claim, a question distinct from this Court's removal jurisdiction.

16. Even if this Court were to grant Candela's motion to dismiss on the basis that the claim for severance benefits is federally preempted, it would still be left with Crespo's state law back pay claim, which Candela concedes is not preempted under ERISA.

does, whether that cause of action preempts the original contract claim.

For these reasons the Court takes no action on the motion of Candela to dismiss but, instead, remands the entire action to the Massachusetts Superior Court for the County of Middlesex.

SO ORDERED.