Stallings v. Head                    CV-95-086-M    03/26/96 P

UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Erik Stallings,
      Plaintiff,

      v.                                          Civil No. 95-86-M

Thomas F. Head; and
Environmental Interiors, Inc.,
      Defendants.


                              O R D E R


      This suit was originally filed by the plaintiff, Erik

Stallings, in the New Hampshire Superior Court.  The defendants,

Stallings' former employer, Environmental Interiors, Inc.

("EII"), and its chairman and principal stockholder, Thomas Head,

removed the case to this court on grounds that two of plaintiff's

state claims were preempted by the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and

thus arose under the laws of the United States.  See 28 U.S.C.

§ 1441(a).

      Plaintiff's state writ asserts three counts — breach of

contract, violation of state wage laws, and common law fraud.

The three counts are more definitively characterized as claims

for damages for:  1) unpaid salary; 2) unpaid performance

compensation under the employer's "JB 30 plan"; 3) unpaid

severance, vacation, and sick time pay; and 4) promised but unpaid employer contributions to a multi-employer union pension plan.

Defendants initially based removal on the federal character of both the unpaid severance and unpaid pension contribution claims. Defendants have since waived their assertion that ERISA preempts the severance pay claim:

> Upon a full review of the facts, defendants have concluded that there was no severance "plan" subject to ERISA governance. Defendants, therefore, do not rely upon plaintiff's severance claim as a basis for federal jurisdiction. Defendants' Supplemental Memorandum, document no. 15, at 2 n.2.

However, plaintiff seems to have altered his own legal course and now argues, albeit vaguely from a factual standpoint, that ERISA does preempt his state severance pay claim. See Plaintiff's Supplemental Hearing Memorandum, document no. 17, at 14-17.

Defendants have moved to dismiss all counts on grounds that each cause of action is barred either by the applicable state statute of limitations or the statute of frauds. Defendants also challenge plaintiff's standing to enforce their obligation to contribute to his union pension fund. Because the court was

2

concerned at the outset about its own jurisdiction, as well as other issues, it scheduled a hearing and requested legal memoranda. Having carefully reviewed the parties' respective positions and the applicable law, the court is satisfied that while the initial removal may have been proper — based on federal preemption of plaintiff's claim against his employer for contributions to his union pension fund — that federal claim must be dismissed on grounds that plaintiff is without standing to assert it (at least in the first instance). The severance pay claim does not appear to be subject to ERISA preemption. Therefore, although not dismissed (because it remains a viable state claim on both a contract and state statutory theory), that claim cannot support the continued exercise of federal jurisdiction.

Accordingly, as explained below, because no viable federal causes of action remain, the case will be remanded to the New Hampshire Superior Court (Hillsborough South) for trial of the state contract, wage, and fraud counts, excepting of course plaintiff's pension contribution claim, which is dismissed without prejudice for lack of standing.

1.    The Employer Contribution to a Multiemployer Union
      Pension Plan Claim

The parties agree that at all times material to this suit EII has been obligated to adhere to the terms of a collective bargaining agreement with the Boston District Council, Local 33, United Brotherhood of Carpenters and Joiners of America, AFL-CIO (the "Union").  EII also concedes that under that agreement it was required to make contributions to the Union pension fund on behalf of qualified employees, and did so on Stallings' behalf through 1989, but not since.  Stallings asserts that contributions also should have been paid on his behalf from 1989 until his resignation in October of 1994, and he seeks to recover those amounts.

As an initial matter, it should be self-evident that any recovery of unpaid employer contributions due the Union pension fund under the collective bargaining agreement would of course be payable to the Union pension fund, and not to plaintiff.  Therefore, if plaintiff can sue to recover those contributions at all, he can only sue in a derivative capacity, on behalf of and for the benefit of the Union pension fund.  See e.g., Struble v. N.J. Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 337-38 (3rd Cir. 1984); Diduck v. Kaszycki & Sons Contractors, Inc., 737

4

F.Supp. 792, 797-98 (S.D.N.Y. 1990) rev'd on other grounds, 974

F.2d 270 (2nd Cir. 1992).

ERISA does expressly require, in Section 515, that employers

make contributions owed to a multiemployer pension plan:

> Every employer who is obligated to make
> contributions to a multiemployer plan under
> the terms . . . of a collectively bargained
> agreement shall, to the extent not
> inconsistent with the law, make such
> contributions in accordance with the terms
> and conditions of . . . such agreement.

29 U.S.C. § 1145.

However, enforcement of an employer's Section 515

contribution obligation "is the function, at least in the first

instance, of the trustees" of the Union's pension fund. Struble,

732 F.2d at 337, 338. As explained by the Court of Appeals for

the Second Circuit:

> ERISA's remedial scheme reflects the
> intention of its drafters that the
> enforcement of contribution obligations is
> the function, at least in the first instance,
> of the trustees. As we have recently
> explained in Livolsi v. Ram Construction Co.,
> Inc., 728 F.2d 600 at 601-02 (3d Cir. 1984),
> section 1132(a)(1)(B) of ERISA protects
> rights under the benefit plan that are
> personal to the beneficiary. Section
> 1132(a)(3), on the other hand, creates a
> remedy for "structural, systematic violations
> of the ERISA scheme." Livolsi, at 602. This

> latter remedy is available to beneficiaries as well as fiduciaries, but it provides only for equitable relief. In 1980, however, Congress added section 1132(g)(2), which authorized awards for unpaid employer contributions, the interest thereon, and attorneys' fees and costs, but only in actions "by a fiduciary for or on behalf of a [multiemployer] plan . . . ." 29 U.S.C. § 1132(g)(2) (Supp. IV 1980). It is clear, therefore, that although the beneficiaries of a plan may have a right to injunctive relief for unpaid contributions (a matter we do not decide), they do not have a direct action for damages under ERISA.

Id. at 337-38.

Because the trustees of a Union pension fund "may not discover underpayments until a beneficiary applies for benefits, which can be some years after the employment relationship has ended . . . [or] until they conduct an audit," it would seem to be in plaintiff's interest to notify the appropriate union trustees of the alleged contribution deficiencies, thereby inducing them to action, or at least establishing his right to pursue the claim derivatively under 29 U.S.C. § 1145. Robbins v. Iowa Road Builders Co., 828 F.2d 1348, 1354 (8th Cir. 1987) (citing Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559 (1985)) cert. denied, 487 U.S. 1234 (1988). In Robbins the Eighth Circuit, noting that ERISA does not contain a statute of limitations applicable to

6

trustee actions to recover delinquent contributions under Section 515, concluded that the appropriately borrowed state limitation would be that applicable to actions for breach of a written contract. That issue does not appear to be resolved in this circuit.

In any event, because beneficiaries of multiemployer pension plans have no right of direct action against employers to enforce contribution obligations under 29 U.S.C. § 1145, plaintiff's claim must be dismissed for lack of standing, and, to the extent he might act in a derivative capacity, as premature. Accordingly, that claim is dismissed, without prejudice.

2. <u>The Severance Pay Claim</u>

As noted earlier, defendants no longer rely upon federal preemption of plaintiff's claim for severance pay to support removal jurisdiction, and they concede that the severance pay claim is not preempted by ERISA because the alleged obligation, whether it exists or not, is entirely unrelated to any "welfare benefit <u>plan</u>" falling within ERISA's reach. Plaintiff, however, now seems to argue that the severance pay claim <u>is</u> preempted — whether he does so to support the exercise of federal jurisdiction in order to take advantage of what he (erroneously)

7

perceives to be a more favorable statute of limitations is unclear. See Plaintiff's Supplemental Hearing Memorandum, document no. 17, at 14-17.

Nevertheless, putting aside for a moment that defendants do not rely on an ERISA preemption defense as a basis for removal or to otherwise assert federal jurisdiction, a brief examination of the severance pay claim as a basis for exercising federal jurisdiction is warranted. The starting point, as in all ERISA preemption cases, is the nature of the claim as pled in the state writ. Here plaintiff's state writ is vague and conclusory in the extreme relative to his severance pay claim. The only substantive, or descriptive, reference to the claim is found in paragraph 6:

> 6.  At the time, Stallings began employment with EII, Stallings and Head entered into an oral employment agreement, in which agreement Stallings would be compensated with a base salary, compensation for severance, sick leave and vacation time, and monthly employer contributions to Stallings' union pension fund. Writ at ¶ 6.  (emphasis added)

Other than that and a general allegation, in paragraph 12 of the writ, of a subsequent increase in Stalling' base salary "plus compensation for severance," the only other references to

8

severance pay are tangential and repetitive, certainly not descriptive.

In plaintiff's Supplemental Hearing Memorandum (document no. 17, p.15), some slight elaboration is provided:

> In the case at bar, severance pay was paid to numerous departing employees. In addition, severance pay <u>was</u> tendered to the plaintiff who refused to accept it in compromise of loss of other amounts due and owing. The fact that the severance pay tendered to the plaintiff was not an isolated incident but a normal practice and procedure of EII, constitutes a "plan" under ERISA.

However, as Judge Young, of the District of Massachusetts, carefully explains in his thorough treatment of ERISA preemption of severance pay claims in <u>Crespo v. Candela Laser Corp.</u>, 780 F.Supp. 866 (D. Mass. 1992):

> . . . underlying any assertion that ERISA preempts a state law claim for recovery of employee benefits is necessarily the assumption that, as a matter of law, the benefits in question qualify as a welfare benefit <u>plan</u> within the meaning of ERISA. . . . Thus, if no such plan is established on the basis of the facts alleged, then the federal regulatory concerns of ERISA are not implicated, and a federal court has no jurisdiction over the claim. "Disputes concerning severance pay may, but do not necessarily, implicate ERISA and support federal jurisdiction. To establish federal jurisdiction, the complaint must

> allege such facts as well as show the
> establishment or maintenance of a `plan, fund
> or program' of the type covered by ERISA."
> <u>Molyneux v. Arthur Guinnes and Sons, P.L.C.</u>,
> 616 F.Supp. 240, 243 (S.D.N.Y. 1985) (Absence
> of adequate allegations of such an ERISA
> plan; thus no subject matter jurisdiction.)

<u>Crespo</u>, 780 F.Supp. at 869-70. <u>See also</u> <u>Crespo</u>, at 871, citing <u>Scott v. Gulf Oil Corp.</u>, 754 F.2d 1499, 1503-04 (9th Cir. 1985) ("[A] mere allegation that an employer . . . ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage . . . . Such an allegation fails to allege the `establishment' of a plan.").

The generally accepted test for determining whether a "plan" within the meaning of ERISA has been adequately described, or established, is taken from <u>Donovan v. Dillingham</u>, 688 F.2d 1367 (11th Cir. 1982) (<u>en</u> <u>banc</u>). "Under that formulation, the presence of an employee benefit plan can be established `if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" <u>Crespo</u>, 780 F.Supp. at 872 (quoting <u>Donovan</u>, 688 F.2d at 1373).

Applying that test here, there can be little argument that plaintiff's writ, even considering his memorandum assertions as amendments, falls decidedly short of describing a claim for

10

severance pay benefits preempted by ERISA.  There are no hints of the existence of anything like a "plan" contemplated by ERISA. Plaintiff stakes his severance pay claim on a particular oral representation made to him upon hiring, while alluding vaguely to "numerous" other unnamed employees who departed and received some form of severance.  It cannot be determined from such conclusory statements whether, for example, EII had a written or customary "policy" of paying all employees severance on departure; or, only "qualifying" employees (e.g., those not discharged for cause); or what the benefit eligibility criteria might be; or how the benefit "plan" is financed; or whether or under what circumstances the "policy" was published to employees; or who would calculate benefits (e.g., whether an ongoing need for administration of the "plan" was necessary); or, what procedures, if any, were in place for making application for or receiving benefits.  As in Molyneux, supra, plaintiff's state writ falls far short because it "states no more than that `several' employees of the alleged `group' have received severance payments."  Crespo, 780 F.Supp. at 872 (quoting Molyneux, 616 F.Supp. at 244 n.5).

It is abundantly clear that neither plaintiff's writ nor the other pleadings filed by the parties come close to establishing

11

that the severance pay claim is preempted by ERISA. "Though this court does not set a standard more precise than that delineated in Donovan, it concludes that holding for [plaintiff's assertion of federal jurisdiction] here would permit removal upon even the most conclusory allegations of employer benefits, thereby unnecessarily involving the federal courts in claims that stretch ERISA preemption beyond any conceivable purpose envisioned by Congress." Crespo, 780 F.Supp. at 875.

Judge Young pointed out in Crespo that complete preemption is necessary to removal and the exercise of federal jurisdiction, relying on the Seventh Circuit's explanation that:

> the complete preemption doctrine is not [at bottom] a preemption doctrine [at all] but rather a federal jurisdiction doctrine. Thus, a case must be remanded to state court if the sole basis for federal jurisdiction is a preemption defense and if the federal court finds that the preemption is insufficiently complete to confer federal question jurisdiction. This jurisdictional decision by the federal court does not preclude the state court from finding that the state law cause of action is preempted by federal law. In such an event the state court will simply apply federal law in resolving the dispute.

Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989), cert. denied, 498 U.S. 1011 (1990).

12

Having found that plaintiff's severance pay claim has not been shown to relate to a "welfare benefit plan" within the meaning of ERISA for the purpose of supporting either removal or continued assertion of federal jurisdiction over that claim, it follows that this court is without federal subject matter jurisdiction. There are, then, no remaining federal claims, plaintiff's claim related to enforcing his employer's obligation to make contributions to his union pension fund having been dismissed.

As the only remaining claims arise from state law which present issues implicating state equitable policies best resolved by state judges, this court declines to exercise its supplemental jurisdiction over those removed claims, even granting that removal was proper in the first place. See 28 U.S.C. § 1367(c)(3).

## Conclusion

To the extent plaintiff seeks to enforce defendants' obligations to make contributions on his behalf to his Union's multiemployer pension fund, that claim is dismissed without prejudice due to his lack of standing to assert such a claim under 29 U.S.C. § 1145 in the first instance. There being no

13

other claims pending over which federal jurisdiction may be asserted, the court declines to exercise supplemental jurisdiction over the removed state law claims. All of plaintiff's claims, except the dismissed § 1145 claim, are hereby remanded to the New Hampshire Superior Court (Hillsborough South).


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

March 26, 1996

cc:  John E. Laboe, Esq.
     Jeffrey B. Osburn, Esq.
     Joel Sowalsky, Esq.

14